**OUT-OF-NETWORK SERVICES (NON-PPO)**

Out-of-Network Services (Non-PPO) are health care services provided by a Physician, Hospital or other provider who is not in the Plan's designated PPO Network. Out-of-Network Covered Charges will be payable
at the Non-PPO benefit level unless the Plan has a direct contract for discounting fees with an Out-of-Network Provider or Out-of-Network services are listed as a PPO benefit exception on page 10 of the Schedule of Benefits, in which case the PPO benefit level will apply.

## PROCEDURES FOR CLAIMS AND APPEALS

The procedures outlined below must be followed by Claimants to obtain payment of benefits under this Plan.

### NOTICE AND PROOF OF CLAIM

Written notice and proof of an incurred Claim should always be filed with the Claims Administrator as soon as possible. **Claims must be filed within twelve (12) months from the date of service to be covered by the Plan.** If an individual's coverage under the Plan ceases, all Claims incurred prior to termination of coverage **must** be filed within twelve (12) months from the date of service, or the Claims will not be covered by the Plan.

Claims **must** be filed sooner in certain circumstances:

_ If the Plan is terminated, all Claims incurred prior to the Plan termination **must** be received within ninety (90) days after the termination or the Claims will not be covered.

Any Claims incurred after termination of Plan coverage for any reason are not covered under the Plan.

Under ERISA, there are four types of Claims: Pre-service (Urgent), Pre-service (Non-urgent), Concurrent Care, and Post-service.

_ A "Pre-service Claim" is a Claim for a benefit under the Plan where the Plan conditions receipt of the benefit, in whole or in part, on approval of the benefit in advance of obtaining medical care. Because the Plan does not require Claimants to obtain approval of a medical service prior to getting treatment on an urgent or non-urgent basis, there are no "Pre-service Claims." The Claimant simply follows the Plan's procedures with respect to notice that is required after receipt of treatment, and files the Claim as a Postservice Claim.

_ A "Concurrent Claim" arises when the Plan has approved an on-going course of treatment to be provided over a period of time or number of treatments, and either: (a) the Plan determines that the course of treatment should be reduced or terminated, or (b) the Claimant requests an extension of the course of treatment beyond that which the Plan has approved. Because the Plan does not require Claimants to obtain approval of medical services prior to getting treatment, there is no need to contact the Utilization Review Company to request an extension of a course of treatment. The Claimant simply follows the Plan's procedures with respect to notice that is required after receipt of treatment, and files the Claim as a Post-service Claim.

_ A "Post-service Claim" is a Claim for a benefit under the Plan after the services have been rendered.

A Post-service Claim is considered to be filed when the following information is received by the Claims Administrator with a Form CMS-1500 or Form UB92 or any successor forms:

1. The date of service;
2. The name, address, telephone number, and tax identification number of the provider of the services or supplies;
3. The place where the services were rendered;
4. The diagnosis and procedure codes;
5. The amount of charges (including any PPO repricing information);
6. The name of the Plan;
7. The name of the Covered Employee; and
8. The name of the patient.

Each Claimant claiming benefits under the Plan shall be responsible for supplying, at such times and in such manner as the Plan Administrator in its sole discretion may require, written proof that the expenses were incurred, or that the benefit is covered under the Plan. If the Plan Administrator in its sole discretion determines that the Claimant has not incurred a Covered Expense, or that the benefit is not covered under the Plan, or if the Claimant fails to furnish such proof as is requested, no benefits shall be payable under the Plan.

## CLAIMS DETERMINATION

The Plan Administrator shall notify the Claimant, in accordance with the provisions set forth below, of any Adverse Benefit Determination within the following timeframes:

_ If the Claimant has provided all of the information needed to process the Claim in a reasonable period of

time, but not later than 30 days after receipt of the Claim. This period may be extended by the Plan for up to 15 days, provided that the Plan Administrator: (a) determines that such an extension is necessary due to matters beyond the control of the Plan, and (b) notifies the Claimant, prior to the expiration of the initial 30-day processing period, of the circumstances requiring the extension of time, and the date by which the Plan expects to render a decision. If an extension has been requested, then the Plan Administrator shall notify the Claimant of any Adverse Benefit Determination prior to the end of the 15-day extension period.

_ If additional information is requested from the Claimant to process the Claim during the initial processing

period, then the Claimant will be notified of a determination of benefits prior to the end of the extension period. If additional information is requested from the Claimant during the extension period, then the Claimant will be notified of the determination by a date agreed to by the Plan Administrator and the Claimant.

A Benefit Determination is required to be made within the period of time beginning when a Claim is deemed

to be filed in accordance with the procedures of the Plan.

## NOTICE OF ADVERSE BENEFIT DETERMINATION

If the initial Benefit Determination is an Adverse Benefit Determination, notification will be sent to the Claimant and will include the following information:

1. The reason or reasons for the Adverse Benefit Determination;
2. References to the Plan provisions on which the Adverse Benefit Determination is based;
3. A description of any additional material or information necessary for the Claimant to perfect the Claim, and an explanation of why such material or information is necessary;
4. A description of the Plan's review procedures and the time limits applicable to such procedures, including a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA following an Adverse Benefit Determination on final review;
5. A statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the Claimant's Claim;
6. The identity of any medical or vocational experts consulted in connection with a Claim, even if the Plan did not rely upon their advice (or a statement that the identity of the expert will be provided upon request);
7. If an internal rule, guideline, protocol, or other similar criterion was relied on in making the Adverse Benefit Determination, either the specific rule, guideline, protocol or other similar criterion, or a statement that such information was relied on in making the Adverse Benefit Determination, and that a copy of the rule, guideline, protocol or other criterion will be provided free of charge on request; and
8. If the Adverse Benefit Determination is based on a medical judgment (such as Medical Necessity or whether the treatment was experimental), either an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the Claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon written request.

## APPEAL PROCESS

The Plan provides for two (2) levels of appeal following an Adverse Benefit Determination. The Claimant has one hundred eighty (180) days following an initial Adverse Benefit Determination to file an appeal of that determination, and sixty (60) days following a second Adverse Benefit Determination to file an appeal of that determination. The appeal process will provide the Claimant with a reasonable opportunity for a full and fair review of the Claim and Adverse Benefit Determination and will include the following:

1. Receipt of written request by the Claims Administrator from the Claimant, or an Authorized Representative of the Claimant, with the proper form for review of Adverse Benefit Determination,

which initiates the appeal process.

2. The Claimant will have the opportunity to submit written comments, documents, records, and other information relating to the Claim.

3. The Claimant will be provided, on request and free of charge: (a) reasonable access to, and copies of all documents, records, and other information relevant to the Claimant's Claim in possession of the Plan Administrator or the Claims Administrator; (b) information regarding any rule, guideline, protocol, or other similar criterion relied upon in making the Adverse Benefit Determination; (c) information regarding any voluntary appeals procedures offered by the Plan; and (d) an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the Claimant's medical circumstances.

4. The review of the Adverse Benefit Determination will take into account all comments, documents, records and other information submitted by the Claimant relating to the Claim, without regard to whether such information was submitted or considered in the initial benefit determination.

5. No deference will be afforded to the previous Adverse Benefit Determination.

6. The party reviewing the appeal may be neither the party who made the prior Adverse Benefit Determination, nor a subordinate of the party who made the prior Adverse Benefit Determination.

7. In deciding an appeal on which the Adverse Benefit Determination was based in whole or in part on a medical judgment, including whether a particular treatment, drug, or other item is experimental, investigational, or not Medically Necessary or appropriate, the Claims Administrator or the Plan Administrator, as appropriate depending on the level of appeal, will consult with a health care professional who has appropriate training and experience in the field of medicine involving the medical judgment. The health care professional consulted for the appeal will not be the health care professional or a subordinate of the health care professional consulted in connection with the Adverse Benefit Determination that is the subject of the appeal.

8. Medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the Adverse Benefit Determination will be identified, even if the Plan did not rely upon their advice.

9. The first level of appeal will be the responsibility of the Claims Administrator and will be decided within thirty (30) days of the Claims Administrator's receipt of the request. The second level of appeal will be decided within thirty (30) days of the Plan's receipt of the request.

**FIRST APPEAL LEVEL**

**Requirements for First Appeal**

The Claimant must file the first appeal, in writing, within 180 days following receipt of the notice of an Adverse

Benefit Determination. The Claimant's appeal must be addressed as follows:

Appeals Department

Group & Pension Administrators, Inc.

Park Central 8

12770 Merit Drive, 2nd Floor

Dallas, Texas 75251

It shall be the responsibility of the Claimant to submit proof that the Claim is covered and payable under the

provisions of the Plan. An appeal must include:

1. The name of the Employee/Claimant;

2. The Employee's/Claimant's social security number;

3. The group name or identification number;

4. All facts and theories supporting the Claim for benefits. **Failure to include any theories or facts in the**

**appeal will result in such facts being inadmissible. In other words, the Claimant will lose the right to raise such factual arguments and theories which support this Claim if the Claimant fails to include them in the appeal;**

5. A statement in clear and concise terms of the reason or reasons for the disagreement with the handling of the Claim; and

6. Any material or information that the Claimant has which indicates that the Claimant is entitled to benefits

under the Plan.

If the Claimant provides all of the required information, it may be that the expenses will be eligible for payment under the Plan.

**Timing of Notification of Benefit Determination on First Appeal**

The Plan shall notify the Claimant of the Plan's Benefit Determination on review within a reasonable period of
time, but not later than thirty (30) days after receipt of the appeal.

The period of time within which the Plan's determination is required to be made shall begin at the time an appeal is filed in accordance with the procedures of this Plan, without regard to whether all information necessary to make the determination accompanies the filing.

**Notice of Benefit Determination on First Appeal**

The Claimant will be notified of the Benefit Determination on appeal. If there is an Adverse Benefit Determination on appeal, the notification will include the following information:

1. The reason or reasons for the Adverse Benefit Determination;
2. References to the Plan provisions on which the Adverse Benefit Determination is based;
3. A description of any additional material or information necessary for the Claimant to perfect the Claim, and an explanation of why such material or information is necessary;
4. A statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the Claimant's Claim;
5. A description of the Plan's review procedures and the time limits applicable to such procedures, including a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA following an Adverse Benefit Determination on final review;
6. A description of voluntary appeal procedures offered by the Plan and, upon the Claimant's request, any additional information about the voluntary appeal procedures;
7. If an internal rule, guideline, protocol, or other similar criterion was relied on in making the Adverse Benefit Determination, either the specific rule, guideline, protocol or other similar criterion or a statement that such was relied on in making the Adverse Benefit Determination, and that a copy of the rule, guideline, protocol or other criterion will be provided free of charge on request;
8. If the Adverse Benefit Determination is based on a medical judgment (such as Medical Necessity or whether or not treatment is experimental), either an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the Claimant's medical circumstances, or a statement that such explanation will be provided free of charge on request;
9. The identity of any medical or vocational experts consulted in connection with the Claim, even if the Plan did not rely upon their advice; and
10. The following statement: "You and your Plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State Insurance Regulatory Agency."

**Furnishing Documents in the Event of an Adverse Determination**

In the case of an Adverse Benefit Determination on review, the Plan Administrator shall provide such access
to, and copies of, documents, records, and other information described in the section relating to Notice of Benefit Determination on First Appeal, as appropriate.

**SECOND APPEAL LEVEL**

**Adverse Decision on First Appeal; Requirements for Second Appeal**

Upon receipt of notice of the Plan's Adverse Benefit Determination regarding the first appeal, the Claimant
has 60 days to file a second appeal of the denial of benefits. The Claimant again is entitled to a "full and fair
review" of any denial made at the first appeal, which means the Claimant has the same rights during the second appeal as he or she had during the first appeal. As with the first appeal, the Claimant's second appeal must be in writing and must include all of the items set forth in the section entitled "Requirements for
First Appeal."

**Timing of Notification of Benefit Determination on Second Appeal**

The Plan shall notify the Claimant of the Plan's Benefit Determination on review within a reasonable period of
time, but not later than thirty (30) days after receipt of the second appeal.

The period of time within which the Plan's determination is required to be made shall begin at the time the second appeal is filed in accordance with the procedures of this Plan, without regard to whether all information necessary to make the determination accompanies the filing.

**Manner and Content of Notification of Adverse Benefit Determination on Second Appeal**

The same information must be included in the Plan's response to a second appeal as a first appeal, except
for: (a) a description of any additional information necessary for the Claimant to perfect the claim and an explanation of why such information is needed; and (b) a description of the Plan's review procedures and the
time limits applicable to the procedures. See the section entitled "Notice of Benefit Determination on First Appeal."

**Furnishing Documents in the Event of an Adverse Determination**

In the case of an Adverse Benefit Determination on the second appeal, the Plan Administrator shall provide
such access to, and copies of, documents, records, and other information described in the section relating to
the Notice of Benefit Determination on First Appeal, as appropriate.

**Decision on Second Appeal to be Final**

If, for any reason, the Claimant does not receive a written response to the appeal within the appropriate time
period set forth above, the Claimant may assume that the appeal has been denied. The decision will be final,
binding and conclusive, and will be afforded the maximum deference permitted by law. **All claim review procedures provided for in the Plan must be exhausted before any legal action is brought. Any legal
action for the recovery of any benefits must be commenced within three years after the Plan's claim
review procedures have been exhausted. Any action with respect to a fiduciary's breach of any responsibility, duty or obligation hereunder must be brought within three years after the date of service.**

**Appointment of Authorized Representative**

A Claimant is permitted to appoint an Authorized Representative to act on his behalf with respect to a benefit
claim or appeal of an Adverse Benefit Determination. An assignment of benefits by a Claimant to a provider
will not constitute appointment of that provider as an Authorized Representative. To appoint such a representative, the Claimant must complete a form which can be obtained from the Plan Administrator or the
Claims Administrator. In the event a Claimant designates an Authorized Representative, all future communications from the Plan will be with the Authorized Representative, rather than the Claimant, unless
the Claimant directs the Plan Administrator, in writing, to the contrary.

Sandion dba Coldwell Banker United, Realtors Medical Benefits Plan

Effective: October 1, 2010

The following provisions are hereby adopted by the Plan Sponsor for the purpose of incorporating the Claim Review and Audit Program and granting certain fiduciary authority to ELAP Services, LLC as the Designated Decision Maker (the "DDM"), for resolution of certain referred appeals of claim determinations.

The Sandion dba Coldwell Banker United, Realtors Medical Benefits Plan (the "Plan") hereby adopts the following provisions:

1.    Add the following new Plan provision:

## CLAIM REVIEW AND AUDIT PROGRAM

Claim Review and Audit Program
The Plan has arranged with the "Designated Decision Maker" ("DDM") for a program of claim review and auditing in order to identify charges billed in error, charges for excessive or unreasonable fees and charges for services which are not medically appropriate. Benefits for claims which are selected for review and auditing will be reduced for any charges that are determined to be in excess of Allowable Claim Limits (as defined below). This determination of Allowable Claim Limits under this Program will supersede any Plan provisions related to application of a usual, customary or reasonable fee determination.

Medical care providers will be notified of any charges that are found to be in excess of Allowable Claim Limits, and allowed to file an appeal of the determination in accordance with the requirements of the Plan. If a Plan Participant continues to receive billings from the medical care provider for these charges, he or she should contact the DDM or the Plan Administrator for assistance. The Plan Participant will remain responsible for payment required through any cost-sharing features of the Plan, such as Deductibles, Coinsurance and Copayments, and any amounts otherwise excluded or limited according to the terms of the Plan (other than amounts determined to be in excess of Allowable Claim Limits).

The success of this program will be achieved through a comprehensive review of detailed records including, for example, itemized charges and descriptions of the services and supplies provided. Without this detailed information, the Plan will be unable to make a determination of the amount of Covered Medical Expense that may be eligible for reimbursement. Any additional information required for the audit will be requested directly from the provider of service and the Claimant. In the event that the Plan Administrator does not receive information adequate for the claim review and audit within the time limits required under ERISA, it will be necessary to deny the claim. Should such a denial be necessary, the Claimant and/or the provider of service may appeal the denial in accordance with the provisions which may be found in the section, "Procedures for Claims and Appeals" in this Summary Plan Description.

In the following provisions of the Claim Review and Audit Program, the term "Plan Administrator" shall be deemed to mean the "Designated Decision Maker" ("DDM"):

"Allowable Claim Limits" means the charges for seNices and supplies, listed and included as Covered Medical Expenses under the Plan, which are Medically Necessary for the care and treatment of Illness or Injury, but only to the extent that such fees are within the Allowable Claim

Limits. Determination that a charge is within the Allowable Claim Limit will be made by the Plan Administrator and will include, but not be limited to, the following guidelines:

1. <u>Hospital</u>. The Allowable Claim Limit for charges by a Hospital facility and for charges by facilities which are owned and operated by a Hospital will be based upon 112% of the Hospital's most recent departmental cost ratio, reported to the Centers for Medicare and Medicaid Services ("CMS") and published in the American Hospital Directory as the "Medicare Cost Report" (the "CMS Cost Ratio").

*If a provider or facility is a Hospital or is owned or operated by a Hospital, or if the Plan is able to identify a current CMS Cost Ratio that applies to the provider or facility, then the CMS Cost Ratio will be used to determine the Allowable Claim Limit. Otherwise, the bullets below will apply.*

2. <u>Pharmaceuticals.</u> The Allowable Claim Limit for pharmacy charges by a provider which does not report cost ratios to CMS will be determined by applying the Average Wholesale Price (AWP) as defined by REDBOOK at the rate of 112% of AWP.

3. <u>Medical and Surgical Supplies. Implants. Devices</u>. The Allowable Claim Limit for charges for medical and surgical supplies made by a provider which does not report cost ratios to CMS will be based upon invoice price to the provider, plus 12%. The documentation used as the resource for this determination will include, but not be limited to, invoices, receipts, cost lists or other documentation as deemed appropriate by the Plan Administrator.

4. <u>Lab. X-ray, Therapy and Physician.</u> The Allowable Claim Limit for these seNices which are rendered by a provider which does not report cost ratios to CMS will be determined based upon a comparison with the fees of other providers rendering the same type of seNice in the same geographic region. The Allowable Claim Limit for such seNice will not exceed the amount of the fees for comparable seNices in the geographic region at the 90th percentile, which is the highest percentile reflected in the <u>Physician Fee Reference</u> ("PFR").

5. <u>Ambulatory Surgery Centers</u>. The Allowable Claim Limit for Ambulatory Surgical Centers which are independent facilities that do not report cost ratios to CMS will be based upon the Medicare allowed amount for the services in the geographic region, plus 20%.

6. <u>Ancillary (other) Medical and/or Surgical Services</u>. The Allowable Claim Limit for seNices not otherwise listed above will be calculated based upon industry-standard resources including, but not limited to, CMS Cost Ratios, Medicare allowed fees (by geographic region), published and publicly available fee and cost lists and comparisons, any resources listed in the categories above, or any combination of such resources that results in the determination of a reasonable expense under the Plan, in the opinion of the Plan Administrator. The Allowable Claim Limit for these seNices will be calculated using one or more of the industry-standard resources, plus 12%.

7. <u>Unbundling.</u> The Allowable Claim Limit will not include charges for any items billed separately that are customarily included in a global billing procedure code in accordance

with American Medical Association's CPT® (Current Procedural Terminology) and/or the Healthcare Common Procedure Coding System (HCPCS) codes used by CMS.

8. <u>Errors.</u> The Allowable Claim Limits will not include any identifiable billing mistakes including, but not limited to, upcoding, duplicate charges, and charges for services not performed. Allowable Claim Limits also will not include charges that are required to treat Injuries sustained or Illnesses contracted, including infections and complications, which, in the opinion of the Plan Administrator and based upon the medical records of the treatment, can be attributed to a medical error by the provider.

9. <u>Medical Record Review.</u> In the event that the Plan, based upon a medical record review and audit, determines that ·a different treatment or different quantity of a drug or supply was provided which is not supported in the billing, then the Plan Administrator may determine the Allowable Claim Limit according to the medical record review and audit results.

10. <u>Not Able to Identify or Understand.</u> The Allowable Claim Limits will not include any charges for which the Plan Administrator cannot identify or understand the item(s) being billed.

In the event that the Plan Administrator determines that insufficient information is available to identify the Allowable Claim Limit for a specific service or supply using the listed guidelines above, consideration will be given to such fees for the geographic location, the most comparable services or supplies.and based upon comparative severity. The Plan Administrator reserves the right, in its sole discretion, to determine any Allowable Claim Limit amount for certain conditions, services and supplies using accepted industry-standard documentation, uniformly applied without discrimination to any Covered Person.

Notwithstanding any conflicting contracts or agreements, the Plan may consider the Allowable Claim Limits as the maximum amount of Covered Medical Expense that may be considered for reimbursement under the Plan, and may apply this determination in lieu of any PPO network provider hospitals' per diem, DRG rates or PPO discounted rates as the amount considered for reimbursement under the Plan. Additionally, in the event that a determination of an Allowable Claim Limit exceeds the actual charge billed for the service or supply, the Plan will consider the lesser of the actual billed charge or the Allowable Claim Limit determination.

2.    <u>Delete Plan provisions for claim procedures and replace with the following:</u>

## PROCEDURES FOR CLAIMS AND APPEALS

The procedures outlined below must be followed by Claimants to obtain payment of benefits under this Plan.

### NOTICE AND PROOF OF CLAIM

Written notice and proof of an incurred Claim should always be filed with the Claims Administrator as soon as possible. Claims must be filed within twelve (12) months from the date the charge for the service to be covered by the Plan is Incurred. If an individual's coverage under the Plan ceases, all Claims Incurred prior to termination of coverage must be filed within twelve (12) months from the date the charge for the service is Incurred, or the Claims will not be covered by the Plan.

Claims must be filed sooner in certain circumstances:

If the Plan is terminated, all Claims Incurred prior to the Plan termination **must** be received within ninety (90) days after the termination or the Claims will not be covered.

Any Claims Incurred after termination of Plan coverage for any reason are not covered under the Plan.

Under ERISA, there are four types of Claims: Pre-service (Urgent), Pre-service (Non-urgent), Concurrent Care, and Post-service.

A "Pre-service Claim" is a Claim for a benefit under the Plan where the Plan conditions receipt of the benefit, in whole or in part, on approval of the benefit in advance of obtaining medical care. Because the Plan does not require Claimants to obtain approval of a medical service <u>prior</u> to getting treatment on an urgent or non-urgent basis, there are no "Pre-service Claims." The Claimant simply follows the Plan's procedures with respect to notice that is required after receipt of treatment, and files the Claim as a Post-service Claim.

A "Concurrent Claim" arises when the Plan has approved an on-going course of treatment to be provided over a period of time or number of treatments, and either: (a) the Plan determines that the course of treatment should be reduced or terminated, or (b) the Claimant requests an extension of the course of treatment beyond that which the Plan has approved. Because the Plan does not require Claimants to obtain approval of medical services <u>prior</u> to getting treatment, there is no need to contact the Utilization Review Company to request an extension of a course of treatment. The Claimant simply follows the Plan's procedures with respect to notice that is required after receipt of treatment, and files the Claim as a Post-service Claim.

A "Post-service Claim" is a Claim for a benefit under the Plan after the services have been rendered.

A Post-service Claim is considered to be filed when the following information is received by the Claims Administrator with a Form CMS-1500 or Form UB92 or any successor forms:

1. The date of service;
2. The name, address, telephone number, and tax identification number of the provider of the services or supplies;
3. The place where the services were rendered;
4. The diagnosis and procedure codes;
5. The amount of charges (including any PPO repricing information);
6. The name of the Plan;
7. The name of the Covered Employee; and
8. The name of the patient.

Each Claimant claiming benefits under the Plan shall be responsible for supplying, at such times and in such manner as the Plan Administrator in its sole discretion may require, written proof that the expenses were incurred, or that the benefit is covered under the Plan. If the Plan Administrator in its sole discretion determines that the Claimant has not incurred a Covered Expense, or that the benefit is not covered under the Plan, or if the Claimant fails to furnish such proof as is requested, no benefits shall be payable under the Plan.

## CLAIMS DETERMINATION

The Plan Administrator shall notify the Claimant, in accordance with the provisions set forth below, of any Adverse Benefit Determination within the following timeframes:

If the Claimant has provided all of the information needed to process the Claim in a reasonable period of time, but not later than 30 days after receipt of the Claim. This period may be extended by the Plan for up to 15 days, provided that the Plan Administrator: (a) determines that such an extension is necessary due to matters beyond the control of the Plan, and (b) notifies the Claimant, prior to the expiration of the initial 30-day processing period, of the circumstances requiring the extension of time, and the date by which the Plan expects to render a decision. If an extension has been requested, then the Plan Administrator shall notify the Claimant of any Adverse Benefit Determination prior to the end of the 15-

day extension period.

If additional information is requested from the Claimant to process the Claim during the initial processing period, then the Claimant will be notified of a determination of benefits prior to the end of the extension

period. If additional information is requested from the Claimant during the extension period, then the Claimant will be notified of the determination by a date agreed to by the Plan Administrator and the Claimant.

A Benefit Determination is required to be made within the period of time beginning when a Claim is deemed to be filed in accordance with the procedures of the Plan.

## NOTICE OF ADVERSE BENEFIT DETERMINATION

If the initial Benefit Determination is an Adverse Benefit Determination, notification will be sent to the Claimant and will include the following information:

1. The reason or reasons for the Adverse Benefit Determination;

2. References to the Plan provisions on which the Adverse Benefit Determination is based;

3. A description of any additional material or information necessary for the Claimant to perfect the Claim, and an explanation of why such material or information is necessary;

4. A description of the Plan's review procedures and the time limits applicable to such procedures, including a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA following an Adverse Benefit Determination on final review;

5. A statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the Claimant's Claim;

6. The identity of any medical or vocational experts consulted in connection with a Claim, even if the Plan did not rely upon their advice (or a statement that the identity of the expert will be provided upon request);

7. If an internal rule, guideline, protocol, or other similar criterion was relied on in making the Adverse Benefit Determination, either the specific rule, guideline, protocol or other similar criterion, or a statement that such information was relied on in making the Adverse Benefit Determination, and that a copy of the rule, guideline, protocol or other criterion will be provided free of charge on request; and

8. If the Adverse Benefit Determination is based on a medical judgment (such as Medical Necessity or whether the treatment was experimental), either an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the Claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon written request.

## PHYSICAL EXAMINATION

The Plan Administrator or Claims Administrator has the right to have the Claimant examined as often as reasonably necessary while a claim is pending. Benefits are payable under this Plan only if they are Medically Necessary for the Illness or Accidental Injury of the Covered Person. This Plan reserves the right to make a Utilization Review to determine whether services are Medically Necessary for the proper treatment of the Covered Person. All such information will be confidential.

## CLAIMS AUDIT

Once a written Claim for benefits is received, the Claims Administrator, acting on the discretionary authority of the Plan Administrator, may elect to have such Claim reviewed or audited for accuracy and reasonableness of charges as part of the adjudication process. This process may include, but may not be limited to, identifying: (a) charges for items/services that may not be covered or may not have been delivered, (b) duplicate charges, and (c) charges beyond the reasonable, necessary, and U&C guidelines as

determined by the Plan. In addition, please refer to the section entitled "Claim Review and Audit Program" for information regarding Plan provisions related to the audit and adjudication of certain eligible Claims under that Program.

## PAYMENT OF CLAIMS

Plan benefits are payable to the Covered Employee, unless the Claimant gives written direction, at the time of filing proof of such loss, to pay directly the health care provider rendering such services. Such payment to a health care provider is subject to the approval of the Plan Administrator. If any such benefit remains unpaid at the death of the Covered Employee, if the Claimant is a minor, or if the Claimant is (in the opinion of the Plan Administrator) legally incapable of giving a valid receipt and discharge for any payment, the Plan Administrator may, at its option, pay such benefits to any one or more of the following relatives of the Claimant: wife, husband, mother, father, child or children, brother or brothers, sister or sisters. Such payment will constitute a complete discharge of the Plan's obligation to the extent of such payment, and the Plan Administrator will not be required to follow-up and determine how such paid money was used.

## APPEAL PROCESS

The Plan provides for two (2) levels of appeal following an Adverse Benefit Determination. The Claimant has one hundred eighty (180) days following an initial Adverse Benefit Determination to file an appeal of that determination, and sixty (60) days following a second Adverse Benefit Determination to file an appeal of that determination. The appeal process will provide the Claimant with a reasonable opportunity for a full and fair review of the Claim and Adverse Benefit Determination and will include the following:

1. Receipt of written request by the Claims Administrator from the Claimant, or an Authorized Representative of the Claimant, with the proper form for review of Adverse Benefit Determination, which initiates the appeal process.

2. The Claimant will have the opportunity to submit written comments, documents, records, and other information relating to the Claim.

3. The Claimant will be provided, on request and free of charge: (a) reasonable access to and copies of all documents, records, and other information relevant to the Claimant's Claim in possession of the Plan Administrator, the Designated Decision Maker (DDM) or the Claims Administrator; (b) information regarding any rule, guideline, protocol or other similar criterion relied upon in making the Adverse Benefit Determination; (c) information regarding any voluntary appeals procedures offered by the Plan; and (d) an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the Claimant's medical circumstances.

4. The review of the Adverse Benefit Determination will take into account all comments, documents, records and other information submitted by the Claimant relating to the Claim, without regard to whether such information was submitted or considered in the initial benefit determination.

5. No deference will be afforded to the previous Adverse Benefit Determination.

6. The party reviewing the appeal may be neither the party who made the prior Adverse Benefit Determination, nor a subordinate of the party who made the prior Adverse Benefit Determination.

7. In deciding an appeal on which the Adverse Benefit Determination was based in whole or in part on a medical judgment, including whether a particular treatment, drug, or other item is experimental, investigational, or not Medically Necessary or appropriate, the Claims Administrator, the DDM or the Plan Administrator, as appropriate depending on the level of appeal, will consult with a health care professional who has appropriate training and experience in the field of medicine involving the medical judgment. The health care professional consulted for the appeal will not be the health care professional or a subordinate of the health care professional consulted in connection with the Adverse Benefit Determination that is the subject of the appeal.

8. Medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the

Adverse Benefit Determination will be identified, even if the Plan did not rely upon their advice.

9.    The first level of appeal will be the responsibility of the Claims Administrator and will be decided within thirty (30) days of the Claims Administrator's receipt of the request.  The second level of appeal will be the responsibility of the DDM and will be decided within thirty (30) days of the Plan's receipt of the request.

FIRST APPEAL LEVEL

Requirements for First Appeal
The Claimant must file the first appeal, in writing, within 180 days following receipt of the notice of an Adverse Benefit Determination.  The Claimant's appeal must be addressed as follows:

> Appeals Department
> Group & Pension Administrators, Inc.
> Park Central 8
> 12770 Merit Drive, 2nd Floor
> Dallas, Texas 75251

It shall be the responsibility of the Claimant to submit proof that the Claim is covered and payable under the provisions of the Plan.  An appeal must include:

1.  The name of the Employee/Claimant;
2.  The Employee's/Claimant's social security number;
3.  The group name or identification number;
    4.  All facts and theories supporting the Claim for benefits.  Failure to include any theories or facts in the appeal will result in such facts being inadmissible. In other words, the Claimant will lose the right to raise such factual arguments and theories which support this Claim if the Claimant fails to include them in the appeal;
    5.  A statement in clear and concise terms of the reason or reasons for the disagreement with the handling of the Claim; and
    6.  Any material or information that the Claimant has which indicates that the Claimant is entitled to benefits under the Plan.

If the Claimant provides all of the required information, it may be that the expenses will be eligible for payment under the Plan.

Timing of Notification of Benefit Determination on First Appeal
The Plan shall notify the Claimant of the Plan's Benefit Determination on review within a reasonable period of time, but not later than thirty (30) days after receipt of the appeal.

The period of time within which the Plan's determination is required to be made shall begin at the time an appeal is filed in accordance with the procedures of this Plan, without regard to whether all information necessary to make the determination accompanies the filing.

Notice of Benefit Determination on First Appeal

The Plan shall notify the Claimant of the Plan's Benefit Determination on review within a reasonable period of time, but not later than thirty (30) days after receipt of the second appeal.

The period of time within which the Plan's determination is required to be made shall begin at the time the second appeal is filed in accordance with the procedures of this Plan, without regard to whether all information necessary to make the determination accompanies the filing.

**Manner and Content of Notification of Adverse Benefit Determination on Second Appeal**

The same information must be included in the Plan's response to a second appeal as a first appeal, except for: (a) a description of any additional information necessary for the Claimant to perfect the claim and an explanation of why such information is needed; and (b) a description of the Plan's review procedures and the time limits applicable to the procedures. See the section entitled "Notice of Benefit Determination on First Appeal."

## Furnishing Documents in the Event of an Adverse Determination

In the case of an Adverse Benefit Determination on the second appeal, the Plan Administrator shall provide such access to, and copies of, documents, records, and other information described in the section relating to the Notice of Benefit Determination on First Appeal, as appropriate.

## Decision on Second Appeal to be Final

If, for any reason, the Claimant does not receive a written response to the appeal within the appropriate time period set forth above, the Claimant may assume that the appeal has been denied. The decision will be final, binding and conclusive, and will be afforded the maximum deference permitted by law. **All claim review procedures provided for in the Plan must be exhausted before any legal action is brought. Any legal action for the recovery of any benefits must be commenced within three years after the Plan's claim review procedures have been exhausted. Any action with respect to a fiduciary's breach of any responsibility, duty or obligation hereunder must be brought within three years after the date of service.**

## Appointment of Authorized Representative

A Claimant is permitted to appoint an Authorized Representative to act on his behalf with respect to a benefit claim or appeal of an Adverse Benefit Determination. An assignment of benefits by a Claimant to a provider will not constitute appointment of that provider as an Authorized Representative. To appoint such a representative, the Claimant must complete a form which can be obtained from the Plan Administrator or the Claims Administrator. In the event a Claimant designates an Authorized Representative, all future communications from the Plan will be with the Authorized Representative, rather than the Claimant, unless the Claimant directs the Plan Administrator, in writing, to the contrary.

## PROVIDER OF SERVICE APPEAL RIGHTS

A Claimant may appoint the provider of service as the Authorized Representative with full authority to act on his or her behalf in the appeal of a denied claim. An assignment of benefits by a Claimant to a provider of service will not constitute appointment of that provider as an Authorized Representative. However, in an effort to ensure a full and fair review of the denied claim, and as a courtesy to a provider of service that is not an Authorized Representative, the Plan will consider an appeal received from the provider in the same manner as a Claimant's appeal, and will respond to the provider and the Claimant with the results of the review accordingly. Any such appeal from a provider of service must be made within the time limits and under the conditions for filing an appeal specified under the section, "Appeal Process," above. **Providers requesting such appeal rights under the Plan must agree to pursue reimbursement for Covered Medical Expenses directly from the Plan, waiving any right to recover such expenses from the Claimant, and comply with the conditions of the section, "Requirements for First Appeal," above.**

For purposes of this section, the provider's waiver to pursue Covered Medical Expenses does not include the following amounts, which will remain the responsibility of the Claimant:

';- Deductibles;
';- Copayments;
';- Coinsurance;
';- Penalties for failure to comply with the terms of the Plan;
';- Charges for services and supplies which are not included for coverage under the Plan; and
   ';- Amounts which are in excess of any stated Plan maximums or limits. Note: This does not apply to amounts found to be in excess of Allowable Claim Limits, as defined in the section, "Claim

Review and Audit Program." The Claimant will not be held responsible for any amounts found to be in excess of Allowable Claim Limits.

Also, for purposes of this section, if a provider indicates on a Form UB92 or on a Form HCFA (or similar claim form) that the provider has an assignment of benefits, then the Plan will require no further evidence that benefits are legally assigned to that provider.

Contact the Claims Administrator or the Plan Administrator for additional information regarding provider of service appeals.

3.     <u>Delete Plan provisions related to plan administration and replace with the following:</u>

Plan Administrator and Designated Decision Maker

The Plan is administered by the Plan Administrator in accordance with the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). An individual or entity may be appointed by the Plan Sponsor to be Plan Administrator and serve at the convenience of the Plan Sponsor. If the Plan Administrator resigns, dies, is otherwise unable to perform, is dissolved, or is removed from the position, the Plan Sponsor shall appoint a new Plan Administrator as soon as reasonably possible.

Notwithstanding any provisions of this Plan Document and Summary Plan Description to the contrary, the Plan Sponsor has the authority to, and hereby does, allocate certain fiduciary responsibility to ELAP, Inc. *(the "Designated Decision Maker" or* "DDM'J. The fiduciary responsibility allocated to the DDM is limited to discretionary authority and ultimate decision-making authority with respect to any appeals of denied claims, which shall be referred to the DDM by the Plan Administrator (the "Referred Appeals"). The Plan Sponsor has allocated additional fiduciary responsibility to the DDM, limited to discretionary authority and ultimate decision-making authority with respect to the review and audit of certain claims in accordance with the applicable Plan provisions under the section, "Claim Review and Audit Program". Such claims selected as eligible for review and audit shall be identified by the DDM under guidelines to which the Plan Sponsor has agreed, and shall be referred to the DDM by the Plan Administrator. The DDM shall have no authority, responsibility or liability other than with respect to the Referred Appeals and its duties under the Claim Review and Audit Program.

The Plan Administrator shall establish the policies, practices and procedures of this Plan. The Plan Administrator and the Designated Decision Maker shall administer this Plan in accordance with its terms. It is the express intent of this Plan that the Plan Administrator and the Designated Decision Maker shall have maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which relate to eligibility for benefits (including the determination of what services, supplies, care and treatments are experimental), to decide disputes which may arise relative to a Plan participant's rights, and to decide questions of Plan interpretation and those of fact relating to the Plan. The decisions of the Plan Administrator and/or the Designated Decision Maker as to the facts related to any claim for benefits and the

meaning and intent of any provision of the Plan, or its application to any claim, shall receive the maximum deference provided by law and will be final and binding on all interested parties. Benefits under this Plan will be paid only if the Plan Administrator or the Designated Decision Maker decides, in its discretion, that the Plan participant is entitled to them.

Duties of the Plan Administrator

The duties of the Plan Administrator include the following:

1.     To administer the Plan in accordance with its terms;
2.     To determine all questions of eligibility, status and coverage under the Plan;
3.     To interpret the Plan, including the authority to construe possible ambiguities, inconsistencies, omissions and disputed terms;
4.     To make factual findings;
5.     To decide disputes which may arise relative to a Plan participant's rights;
6.     To prescribe procedures for filing a claim for benefits, to review claim denials and appeals relating to them and to uphold or reverse such denials;
7.     To keep and maintain the Plan documents and all other records pertaining to the Plan;
8.     To appoint and supervise a third party administrator to pay claims;
9.     To perform all necessary reporting as required by ERISA;
10.    To establish and communicate procedures to determine whether a medical child support order or national medical support notice is a QMCSO;
11.    To delegate to any person or entity such powers, duties and responsibilities as it deems appropriate; and
12.    To perform each and every function necessary for or related to the Plan's administration.

Duties of the Designated Decision Maker

The Designated Decision Maker shall have the following duties with respect to the Referred Appeals:

1.     To administer the Plan in accordance with its terms;
2.     To determine all questions of eligibility, status and coverage under the Plan;
3.     To interpret the Plan, including the authority to construe possible ambiguities, inconsistencies, omissions, and disputed terms;
4.     To make factual findings;
5.     To decide disputes which may arise relative to a Plan participant's rights;
6.     To review Referred Appeals and to uphold or reverse any denials;
7.     To keep and maintain records pertaining to the Referred Appeals;
8.     To perform the duties in conjunction with the provisions of the Claim Review and Audit Program; and
9.     To keep and maintain records pertaining to the Claim Review and Audit Program.

The duties of the DDM shall be limited to those set forth above

4.    <u>Add the following new statement to any Plan provisions related to claim audits:</u>

Please refer to the section entitled "Claim Review and Audit Program" for information regarding Plan provisions related to the audit and adjudication of certain eligible Claims under that Program.

5.    <u>Add the following new statement to any Plan provisions related to usual, customary or reasonable fees</u> (by whatever term used):

For claim determinations made in accordance with the Claim Review and Audit Program, the covered expenses will be limited to the Allowable Claim Limits. Please refer to the section. "Claim Review and Audit Program" for the definition of Allowable Claim Limits.

6.    <u>Delete Plan provisions describing preferred provider organization networks and replace with the following:</u>

PREFERRED PROVIDER INFORMATION

The Preferred Provider Network (PPO) does <u>not</u> include services and supplies provided by Hospital facilities, Ambulatory Surgery Center facilities and by dialysis clinics or facilities. For these types of providers, the Plan will identify the reasonable cost for the services and supplies through its Claim Review and Audit Program. You may contact the Claims Administrator or the Plan Administrator with any questions regarding which facilities may be included under the Claim Review and Audit Program, and which may be included under the PPO network agreement

For Physicians and all other providers of service, this Plan contains provisions under which a Plan Participant may receive more benefits by using certain providers. PPO providers are individuals and entities that have contracted with the Plan to provide services to Plan Participants at pre-negotiated rates. A list of these Preferred Providers will be periodically provided automatically and free of charge by the Plan Administrator. In addition, a Plan Participant may request a Preferred Provider list by contacting the Plan Administrator. The Preferred Provider list changes frequently; therefore, it is recommended that a Plan Participant verify with the provider that the provider is still a Preferred Provider before receiving services.

This plan may use Allowable Claim Limits to determine Covered Charges in lieu of a PPO discount

7. <u>Add the following statement to Plan provisions defining or describing covered medical expenses under the Plan:</u>

Covered expenses are subject to the Allowable Claim Limits under the Claim Review and Audit Program.

8. <u>Add the following statement to Plan provisions defining or describing excluded medical expenses under the Plan:</u>

Charges in excess of Allowable Claim Limits.

9. Add as new, or replace existing Plan definitions with the following terms:

Allowable Expense or Covered Expense: Any medically necessary item of expense, for which the charge is reasonable and necessary, within Allowable Claim Limits, or is based on the contracted fee schedule of an alternate care delivery system. The Allowable Expense will be determined by the Plan Administrator, in its sole discretion.

10. <u>Add as new, or replace any existing related Plan provision for compliance or conformity to applicable law, with the following:</u>

Conformity to Law
This Plan shall be deemed automatically to be amended to conform as required by any applicable law, regulation or the order or judgment of a court of competent jurisdiction governing provisions of this Plan, including, but not limited to, stated maximums, exclusions or limitations. In the event that any law, regulation or the order or judgment of a court of competent jurisdiction causes the Plan Administrator to pay claims that are otherwise limited or excluded under this Plan, such payments will be considered as being in accordance with the terms of this summary plan description. It is intended that the Plan will conform to the requirements of ERISA, as it applies to employee welfare plans, as well as any other applicable law.

ADOPTED BY THE PLAN SPONSOR:

By: _____

Title: _____

Date: _____

# SCHEDULE OF BENEFITS

## Major Medical Benefits for Covered Persons

**NOTE:** All Claims are subject to review and/or audit to ensure that charges are payable in accordance with the terms and limitations of this Plan.

**LEVEL I PROVIDERS** – Facilities and Providers billing as a Facility to include, but not limited to:

- Hospitals (Inpatient and Outpatient treatment)
- Inpatient facilities (such as Rehabilitation Facilities, Skilled Nursing Facilities and Hospice)
- Inpatient and Outpatient facilities for treatment of Mental and Nervous Disorders, Chemical Dependency, Drug and Substance Abuse
- Ambulatory Surgery Centers
- Dialysis Clinics

**LEVEL II PROVIDERS** – Physicians and all other Providers of service

| Maximum Benefits | |
|---|---|
| **Annual Maximum for All Benefits** Only Essential Benefits apply toward the Annual Major Medical Maximum Benefit. | $2,000,000 |

| Deductible and Annual Out-of-Pocket Maximum | Level I Benefit | Level II Non-PPO Benefit |
|---|---|---|
| | **Level II PPO Benefit** | |
| **Calendar Year Deductible** • Per Covered Person • Family Limit* Deductible Carryover applies | $1,000 $3,000 | $1,000 $3,000 |
| **Annual Out-of-Pocket Maximum** (Includes Calendar Year Deductible and Level I Copays) • Per Covered Person • Family Limit* | $5,000 $12,000 | $5,000 $12,000 |

**NOTE:** The Calendar Year Deductible and Annual Out-of-Pocket Maximum are determined by combining both Level I and Level II (PPO and Non-PPO) Covered Charges. Upon reaching the Annual Out-of-Pocket Maximum, Covered Medical Expenses are payable at 100% for the remainder of the Calendar Year. The Lifetime and Calendar Year Maximum Benefits are also determined by combining Level I and Level II (PPO and Non-PPO) Covered Charges.

*Applies collectively to all Covered Persons in the same Family.

## SCHEDULE OF BENEFITS (Cont'd.)

**LEVEL I BENEFITS – Payment Levels and Limits:**
This section applies to covered services rendered by Hospitals and other Facilities shown in the Level I Providers list on page 10 and to charges for services rendered by Providers billing "as a Facility." The benefits shown apply to all such covered, licensed, accredited Providers of service **without regard to participation in a Preferred Provider Organization (PPO) network.**

| Calendar Year Maximum Copay Amounts | |
|---|---|
| Maximum Inpatient Hospital/Facility Confinement Copays <br> - Per Individual <br> - Per Family | $2,250 <br> $3,750 |

| Hospital/Facility Services | | |
|---|---|---|
| **Benefit Percentage For:** | **Level I Benefit** | **Maximum Benefits, Limits & Provisions** |
| **Inpatient Hospital Services** | 100% of Allowable Claim Limits for Room and Board/ancillary charges $750 per Confinement Copay applies Deductible waived | $500 Non-compliance penalty per admission (for failure to notify Utilization Review (UR) Company of Hospital admission). |
| **Maternity Inpatient Hospital Services** | 100% of Allowable Claim Limits for Room and Board/ancillary charges $750 per Confinement Copay applies Deductible waived | Contact UR Company for coordination of care. |
| **Routine Newborn Care Inpatient Hospital Services** (to date of mother's discharge) | 100% of Allowable Claim Limits for nursery Room and Board/ancillary charges; Confinement Copay and Deductible waived | Payable under covered mother's claim. |
| **Skilled Nursing Facility** | 100% of Allowable Claim Limits for Room and Board/ancillary charges $750 per Confinement Copay applies Deductible waived | Limited to 60 days per Calendar Year. UR Notification required or penalty applies. |
| **Rehabilitation Facility** | 100% of Allowable Claim Limits for Room and Board/ancillary charges $750 per Confinement Copay applies Deductible waived | UR Notification required or penalty applies. |
| **Mental & Nervous Disorders/Chemical Dependency, Drug and Substance Abuse Inpatient Hospital Services** | 100% of Allowable Claim Limits for Room and Board/ancillary charges $750 per Confinement Copay applies Deductible waived | UR Notification required or penalty applies. |
| **Hospital Emergency Room Services** | | |
| **Hospital Emergency Room** | 100% of Allowable Claim Limits $200 ER Copay applies Deductible waived ER Copay waived if admitted Inpatient | UR Notification required if admitted Inpatient. |
| **Hospital Outpatient Diagnostic Services** | | |
| **Psychological Testing** | 100% of Allowable Claim Limits Copay and Deductible waived | |
| **Diagnostic Laboratory and X-ray** | 100% of Allowable Claim Limits Copay and Deductible waived | |
| **Select Diagnostic Medical Procedures** (MRI, CT scan, etc.; see list in Comprehensive Medical Benefits section) | 100% of Allowable Claim Limits Deductible waived $500 Outpatient Copay applies | |
| **Bone Density Test, Other Routine Diagnostic Lab and X-ray** | 100% of Allowable Claim Limits Copay and Deductible waived | |
| **Annual Mammogram** (routine) | 100% of Allowable Claim Limits Copay and Deductible waived | |
| **Colonoscopy** (routine) <br><br> Additional Colonoscopy (diagnostic) | 100% of Allowable Claim Limits Copay and Deductible waived <br><br> 100% of Allowable Claim Limits Deductible waived $500 Outpatient Copay applies | Routine limited to age 50 and older or family history of colon cancer and once every 5 years. UR Penalty waived for initial routine or diagnostic colonoscopy in a 5 year period. |

*Coldwell Banker United, Realtors*
*Amendment #1 Eff: 10/1/10*

| Outpatient Surgery/Ambulatory Surgery Centers Covered Services and Supplies | | |
|---|---|---|
| All Covered Expenses | 100% of Allowable Claim Limits<br>$500 Outpatient Surgery Copay applies<br>Deductible waived | UR Notification required or penalty applies. |
| **Outpatient Day Treatment Facility & Outpatient Psychiatric Day Treatment Facility/ Outpatient Chemical Dependency Drug Treatment Facility** | | |
| All Covered Expenses | 100% of Allowable Claim Limits<br>$500 Outpatient Copay applies<br>Deductible waived | UR Notification required or penalty applies. |
| **Chemotherapy, Radiation Therapy, Infusion Therapy, Dialysis Facilities Covered Services and Supplies** | | |
| All Covered Expenses | 80% of Allowable Claim Limits<br>Deductible applies | Contact UR Company for coordination of care. |
| **Diabetic Self-Management Training** | | |
| All Covered Expenses | 80% of Allowable Claim Limits<br>Deductible applies | |
| **Home Health Care Services** | | |
| All Covered Expenses | 100% of Allowable Claim Limits<br>Deductible waived<br>$500 Copay per Series of Treatment | Limited to 60 visits per Calendar Year.<br>Contact UR Company for coordination of care. |
| **All Other Covered Hospital Services and Supplies** | | |
| All Other Covered Expenses | 80% of Allowable Claim Limits<br>Applicable Copay and Deductible apply | UR Notification required for Inpatient or penalty applies. |

## LEVEL II BENEFITS – Payment Levels and Limits:

This section applies to covered services rendered by Physicians and all other Providers not listed in Level I. Benefits shown are payable **based upon the Provider's participation in the Preferred Provider Organization (PPO) network** and covered charges are subject to Usual and Customary and Reasonable fees.

The "Level II PPO Benefit" applies to services rendered by Preferred Providers in the designated PPO Network (In-Network); the "Level II Non-PPO Benefit" applies to services rendered by providers other than Preferred Providers (Out-of-Network). In addition, the "Level II PPO Benefit" applies in the following exceptions:

1.  If a PPO Provider refers a Covered Person to a Physician who is not in the PPO Network because there is no appropriate specialist available among PPO Providers;
2.  If a Medical Emergency or initial treatment of an Accidental Injury requires immediate care, and services are rendered by Non-PPO Providers;
3.  If a Covered Person receives Medically Necessary services from a Non-PPO Provider because the Covered Person is living or traveling outside of the geographic zip code area serviced by the PPO (Out-of-Area); or
4.  If a Covered Person seeks treatment in a Hospital or Ambulatory Surgery Center, and required services are rendered by a Non-PPO radiologist, anesthesiologist, pathologist, assistant surgeon or on-call Physician/specialist.

Maximum Benefits, Limits and Provisions are subject to all other Plan exclusions, limitations and provisions and the applicable lifetime and annual maximums set forth in this Plan.

## SCHEDULE OF BENEFITS (Cont'd.)

| Physician Services | | | |
|---|---|---|---|
| **Benefit Percentage For:** | **Level II**<br>**PPO Benefit** | **Level II**<br>**Non-PPO Benefit** | **Maximum Benefits,**<br>**Limits & Provisions** |
| **Physician Hospital Visits/Surgeon** | 80% of PPO rate<br>Deductible applies | 70% of Usual and<br>Customary fees<br>Deductible applies | |
| **Physician Hospital Visit for Mental & Nervous Disorders/Chemical Dependency, Drug and Substance Abuse** | 80% of PPO rate<br>Deductible applies | 70% of Usual and<br>Customary fees<br>Deductible applies | |
| **Emergency Room Physician and Related Services** | 100% of PPO rate<br>Deductible waived | 100% of Usual and<br>Customary fees<br>Deductible waived | |
| **Maternity** (Including prenatal, delivery and postnatal care.) Lab and X-ray Benefit applies. | 80% of PPO rate<br>Deductible applies<br>Office Visit Copay does not apply after initial visit. | 70% of Usual and<br>Customary fees<br>Deductible applies | Contact UR Company for coordination of care. |
| **Routine Newborn Care** (Pediatric care to date of mother's discharge.) | 80% of PPO rate<br>Deductible waived | 70% of Usual and<br>Customary fees<br>Deductible waived | Payable under covered mother's claim. |
| **One Call Medical Radiological Benefit** (CT scans, MRIs and PET scans) | 100% of One Call Medical negotiated rate<br>Deductible waived | | Call 888-458-8746 to schedule. |
| **Lab and X-ray Benefits** (procedures performed in Physician's office, Outpatient Hospital, Freestanding X-ray Facility or independent lab) | | | |
| **\*Select Diagnostic Medical Procedures** (MRI, CT scan, etc.; see list in Comprehensive Medical Benefits section) When not performed by One Call Medical. | 80% of PPO rate<br>Deductible applies | 70% of Usual and<br>Customary fees<br>Deductible applies | |
|   - All Other Lab/X-ray | 100% of PPO rate<br>Copay and Deductible waived | 100% of Usual and<br>Customary fees: Copay and Deductible waived | |
| **All Covered Physician Office Expenses Including:**<br>• Office Visit<br>• Urgent Care Facility (Minor Emergency Medical Clinic) Office Visit<br>• Allergy testing, serum/injections<br>• Voluntary Second or Third Opinion (exam)<br>• Contraceptive Injections, Implants, IUDs and Diaphragms<br>• Retail Limited Services Clinic<br>• Other Covered Office Services (without office visit billed) | 100% of PPO rate after $25 Copay<br>Deductible waived | 100% of Usual and<br>Customary fees after $25 Copay<br>Deductible waived | |

\* If these services are rendered by providers billing as a Facility, please refer to the appropriate category under Level I for the benefit.

13

| Physician Services | | | |
|---|---|---|---|
| Benefit Percentage For: | Level II PPO Benefit | Level II Non-PPO Benefit | Maximum Benefits, Limits & Provisions |
| Office Surgery | 100% of first $500 then 80% of PPO rate Deductible applies | 100% of first $500 then 80% of Usual and Customary fees Deductible applies | |
| *Sterilization Procedures | 80% of PPO rate Deductible applies | 80% of Usual and Customary fees Deductible applies | |
| Mental & Nervous Disorders/Chemical Dependency, Drug and Substance Abuse Office Visit/Outpatient Therapy/ *Psychological Testing | 100% of PPO rate after $25 Copay Deductible waived | 100% of Usual and Customary fees after $25 Copay Deductible waived | |
| Chiropractic Services (Including x-rays) | 80% of PPO rate Deductible applies | 70% of Usual and Customary fees Deductible applies | Limited to $1,000 Calendar Year Maximum Benefit. |
| All Other Covered Physician Services | 80% of PPO rate Deductible applies | 80% of Usual and Customary fees Deductible applies | |

| Other Covered Services | | | |
|---|---|---|---|
| Benefit Percentage For: | Level II PPO Benefit | Level II Non-PPO Benefit | Maximum Benefits, Limits & Provisions |
| *Outpatient Therapy • Physical • Occupational • Speech • Cardiac Rehabilitation | 80% of PPO rate Deductible applies | 70% of Usual and Customary fees Deductible applies | |
| *Chemotherapy/ Radiation Therapy/ Infusion Therapy/ Dialysis | 80% of PPO rate Deductible applies | 70% of Usual and Customary fees Deductible applies | Contact UR Company for coordination of care. |
| Wig as a result of Chemotherapy/Radiation Therapy | 80% of PPO rate Deductible applies | 70% of Usual and Customary fees Deductible applies | Limited to $500 Lifetime Maximum Benefit. |
| *Home Health Care Services | 80% of PPO rate Deductible applies | 70% of Usual and Customary fees Deductible applies | Limited to 60 visits per Calendar Year. Contact UR Company for coordination of care. |
| *Home Infusion Therapy | 80% of PPO rate Deductible applies | 70% of Usual and Customary fees Deductible applies | Contact UR Company for coordination of care. |
| *Hospice | 80% of PPO rate Deductible applies | 70% of Usual and Customary fees Deductible applies | UR Notification required for Inpatient Hospice. Contact UR Company for coordination of care for Outpatient Hospice. |
| Bereavement Counseling | 100% of PPO rate after $25 Copay Deductible waived | 100% of Usual and Customary fees after $25 Copay Deductible waived | |
| *Diabetic Self- Management Training Office Visit | 100% after $25 Copay Deductible waived | 70% of Usual and Customary fees Deductible applies | |
| Insulin and Diabetic Supplies | 80% of PPO rate Deductible applies | 80% of Usual and Customary fees Deductible applies | |
| *Ambulance — Air or Ground Transportation | 80% of PPO rate Deductible applies | 80% of Usual and Customary fees Deductible applies | |
| All Other Covered Expenses | 80% of PPO rate Deductible applies | 70% of Usual and Customary fees Deductible applies | |

\* If these services are rendered by providers billing as a Facility, please refer to the appropriate category under Level I for the benefit.

*Coldwell Banker United, Realtors*
*Amendment #1 Eff: 10/1/10*

| Preventive and Wellness Care Benefits | | | |
|---|---|---|---|
| This benefit is payable for Covered Procedures incurred as part of a Preventive and Wellness Care Program and is not payable for treatment of a diagnosed Illness or Injury. Services must be identified and billed as routine or part of a routine physical exam. | | | |
| Benefit Percentage For: | Level II PPO Benefit | Level II Non-PPO Benefit | Maximum Benefits, Limits & Provisions |
| All Covered Wellness Benefits | 100% of PPO rate Copay and Deductible waived | 70% of Usual and Customary fees; Deductible applies; Except the following procedures which will be paid at 100% of PPO rate after $25 Copay; PPO Deductible waived: Routine Physical Exam, Annual Well Woman Exam, Annual Mammogram; Well Baby Care Exam and Annual Routine Vision Exam | |

**Examples of Covered Wellness Procedures to include but are not limited to:**

1. Routine Physical Exam
2. Annual Well Woman Exam
3. Annual Pap smear and other routine lab
4. Annual Mammogram (routine)
5. Bone Density test (routine)
6. Annual PSA test and Prostate Exam (routine)
7. Well Baby Care Exam/Well Child Care Exam
8. Routine Immunizations
9. Flu vaccine/pneumonia vaccine
10. Routine lab, x-ray, diagnostic testing and other medical screenings
11. Annual Routine Vision Exam (children and adults)
12. Routine Hearing Exam (newborns)
13. Routine Colonoscopy (age 50 and older or family history of colon cancer and once every 5 years)

*Coldwell Banker United, Realtors*
*Amendment #1 Eff: 10/1/10*